**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTINA ADENIKE GARDINER** | CIVIL ACTION |
| *Plaintiff,* | No. 18-0904 |
| v. | |
| **CITY OF PHILADELPHIA ET AL.** | |
| *Defendants.* | |

## PLAINTIFF'S ANSWER
## TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Plaintiff, by and through the undersigned counsel, hereby avers as follows:

1. Admitted.

2. Admitted.

3. Admitted. By way of further answer, the fact that Defendant Washington was (by Defendants' own admission) Plaintiff's supervisor at the time of Plaintiff's retaliatory termination subjects her to liability under the FMLA. *See Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417, 2012 U.S. App. LEXIS 1776, *22 (2012) and the attached Memorandum of Law. She also testified at her deposition that she made the request that Plaintiff be terminated. Exhibit "2" (Defendant Washington Deposition), 9:20-24. Defendants admit in their answer that, at the time of her termination, Plaintiff was earning $87,975.00 per year. *See* docket item no 2 (Defendant's Answer, paragraph 22.

4. Admitted. By way of further answer, Plaintiff testified that Defendant Washington's conduct toward her after she became Plaintiff's supervisor was " . . . very weird to me

1

. . ." because she " . . . never had any problems prior, with my previous supervisor, Ray Hailey."  Exhibit "1" (Plaintiff's Deposition), 29:4-6.  Defendant Washington also questioned "[Plaintiff's] education and where I was from, nationality-wise, and it starting feeling uncomfortable."  Exhibit "1", 29:7-9.

5. Admitted.  Plaintiff also felt this was the case because she had been at her job for some time with no issues.  Exhibit "1", 30:4-6.

6. Admitted.

7. Admitted.  Plaintiff add that Defendant Washington was " . . . like a shut door for me . . ." and that Defendant Washington "questioned my abilities."  When this occurred, Plaintiff testified, "I said, I did this before, and I gave her my successes, but it didn't work."  Exhibit "1", 38:7-10.

8. Admitted.  By way of further answer, Plaintiff also produced a doctor's note for these absences, Exhibit "1", 40:20-22, meaning Defendants were aware she was having ongoing medical issues and should have considered this fact when they evaluated her later email requesting time off at her doctor's instruction for medical issues.

9. Admitted.  Even members of Plaintiff's team noticed the unnecessary "micromanaging" of Defendant Washington, and asked "why is she here[?]" when she attended their meetings.  Exhibit "1", 43:6-8.

10. Admitted.  By way of further answer, the issues raised by Defendant Washington on the referenced occasion (regarding running a meeting) were related to the fact that Plaintiff was recovering from the flu.  Exhibit "1", 46:1-9.  Moreover, *Defendant Washington never even told Plaintiff she was to prepare to run the meeting.*  Exhibit "1", 46:19-20.  Plaintiff also testified that " . . . If I knew, I would have had no problem

preparing for the meeting." Exhibit "1", 46:21-22. After the meeting in question, Plaintiff felt she had been thrown "under the bus" by Defendant Washington. Exhibit "1", 46:19-22.

11. Admitted. By way of further answer, Plaintiff had the flu and the severity of her illness "caught me off guard." (*see* paragraph 10, *supra*). Exhibit "1", 42:9-12.

12. Denied as stated. Plaintiff explained that she was never even told she was leading the meeting and was thrown "under the bus" while still recovering from the flu. *See* paragraph 10, *supra.*

13. Denied s stated. *See* paragraphs 10 and 12.

14. Admitted Brennan so testified. By way of further answer, Brennan was likely not aware Plaintiff was still ill and that she had never been told she was running the meeting. *See* paragraph 10, *supra*. He recalled no other performance issues regarding Plaintiff that were raised by Defendant Washington other than this *one* meeting. Exhibit "3" (Brennan Deposition), 19:1-9. Even Brennan's response when asked about any performance problems he could recall with Plaintiff shows he could recall, in his own words, only "one meeting." Exhibit "3", 16:15.

15. Admitted. By way of further answer, the micromanaging actually "started getting worse." Exhibit "1", 50:12.

16. Admitted. Plaintiff continued to try to talk to Defendant Washington about these issues to no avail. In her words, ". . . I was never questioned before. I would get compliments from people, even my supervisors and colleagues, on the jobs I was doing and they had no complaints." Exhibit "1", 54:21-25.

17. Admitted.  The Defendants neglect to mention that Defendant Washington also questioned Plaintiff's nationality and education level.  Exhibit "1", 54:19-20.

18. Admitted.  There was no indication from this one email that Plaintiff was to be terminated -  or even disciplined at all. Charles Brennan agrees he recalls no request from Defendant Washington to terminate Plaintiff in the face to face meeting on February 15th.  Exhibit "3", 19:24-25 and 20:1-6.  Defendant Washington directly contradicted this and tried to claim at her deposition that she made the termination request "probably like the first or second week of February, when we had a meeting with Charles Brennan and he witnessed firsthand himself."  Exhibit "2", 11:23-25 and 12:1-3.   Brennan torpedoed that claim with his testimony as aforesaid about the February 15th meeting.   Later in her deposition, Defendant Washington claimed she doesn't know when she made the decision and can only say "I don't remember the exact date, but it would have been somewhere in February."  Exhibit "2", 13:1-2.

19. Admitted.

20. Admitted.

21. Admitted. Again, there was no indication from this February 15th email that Plaintiff was to be terminated -  or even disciplined at all.  Charles Brennan agrees he recalls *no request* from Defendant Washington to terminate Plaintiff in the face to face meeting on February 15th.  Exhibit "3", 19:24-25 and 20:1-6.  Defendant Washington *directly contradicted this* and tried to claim at her deposition that she made the termination request "probably like the first or second week of February, when we had a meeting with Charles Brennan and he witnessed firsthand himself."  Exhibit "2", 11:23-25 and 12:1-3.   Brennan torpedoed that claim with his testimony as aforesaid about the

February 15th meeting.  Later in her deposition, Defendant Washington claimed she doesn't know when she made the decision and can only say "I don't remember the exact date, but it would have been somewhere in February."  Exhibit "2", 13:1-2.

22. Admitted.  *See* paragraph 21.

23.  Admitted.  As noted in the attached Memorandum of Law, this email was protected activity under the FMLA, gave sufficient notice to Defendants to constitute such protected activity, and resulted in Plaintiff's sudden firing *the next day*. It is undisputed that Defendants also never contacted Plaintiff to determine what her "other medical issues" were.

24. Admitted.

25. Admitted.

26. Admitted, but irrelevant.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.  Plaintiff is not proceeding on her ADA claim (Count I) or PHRA claim (Count II).

31. Admitted.  The letter was issued only one day after Plaintiff's protected activity as aforesaid.

32. Defendants' characterizations of the letter's contents are denied as it is in writing and speaks for itself.

33. Admitted that Lamb so claims.  Note the vagueness of the date.  The best Lamb can do is state that the termination was discussed in "February 2017." *No one* has been able

to definitively testify that the termination decision was made *before* Plaintiff's protected activity on February 22, 2017. It is a reasonable inference it was made after her protected activity. There is no documentation (no emails, memos, etc.) that such a decision was ever made, when, or why. Exhibit "2", 13:15-16. Charles Brennan cannot rule out the fact that the request to fire Plaintiff was actually made on February 22, 2017 (*the day Plaintiff sent the email asking for time off*). Exhibit 3, 21:3-6 and 21:18-22. The temporal proximity between the email and the termination letter (a day or less), the vagueness of the recollection of Defendant Washington, Charles Brennan, and Catherine Lamb as to the actual date of the termination decision, the lack of any documentation relating to the termination, the fact that the February 15th incident did not result in a termination request, and that the fact that there appear to be no other performance problems that were raised between that date and the February 22nd protected activity, all require denial of summary judgment as to Plaintiff's FMLA retaliation claim. Indeed, there is Third Circuit case authority that the temporal proximity *alone* is enough to merit denial of a motion for summary judgment on an FMLA retaliation claim.

34. Admitted but irrelevant, as the "catspaw" doctrine applies to Defendant Washington's request that Plaintiff be terminated. *See* attached Memorandum of Law. Defendant Washington received the leave request email sent by Plaintiff and testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.

35. Admitted but irrelevant, as the "catspaw" doctrine applies to Defendant Washington's request that Plaintiff be terminated. *See* attached Memorandum of Law. Defendant

6

Washington received the leave request email sent by Plaintiff and testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.

36. Admitted but irrelevant, as the "catspaw" doctrine applies to Defendant Washington's request that Plaintiff be terminated. *See* attached Memorandum of Law. Defendant Washington received the leave request email sent by Plaintiff and testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.

37. Admitted but irrelevant as the "catspaw" doctrine applies to Defendant Washington's request that Plaintiff be terminated. *See* attached Memorandum of Law. Defendant Washington received the leave request email sent by Plaintiff and testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.

38. Admitted but irrelevant as the "catspaw" doctrine applies to Defendant Washington's request that Plaintiff be terminated. *See* attached Memorandum of Law. Defendant Washington received the leave request email sent by Plaintiff and testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.

        Respectfully submitted,

        S/ Wayne A. Ely, Esquire

        Wayne A. Ely, Esquire
        Attorney for Plaintiff
        59 Andrea Drive
        Richboro, PA 18954
        (215) 801-7979

May 8, 2019