IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA ADENIKE GARDINER** | CIVIL ACTION |
| *Plaintiff,* | No. 18-0904 |
| v. | |
| **CITY OF PHILADELPHIA ET AL.** | |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction and Brief Summary of Plaintiff's Argument**

Defendants' Motion for Summary Judgment is currently before the Court for disposition. For the reasons set forth herein, summary judgment should be denied on Plaintiff's FMLA retaliation claim against both defendants (Count III of Plaintiff's Complaint).

**II.  Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, the entry of summary judgment is appropriate only in those cases " . . . where there is no genuine issue of material fact for the jury to decide." *See Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3rd Cir. 1993). Thus, summary judgment may be granted only when there is *no dispute* as to any issue of material fact and where the moving party is entitled to judgment as a matter of law. *Id.*

In response to a motion for summary judgment, the non-movant (herein, the Plaintiff) must demonstrate the existence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505 (1986). The burden always remains on the moving party, however, to show that a rational trier of fact could not find for the non-moving party and that there

1

is thus no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986). Defendant cannot meet the foregoing burden in the instant case.

In deciding a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party (here, the Plaintiff) as true, and must not weigh or consider the credibility of witnesses. *Anderson, supra,* 477 U.S. at 248-52. Any and all doubts must be resolved in Plaintiff's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S. Ct. 2072, 2076 (1992). Where (as is the case here) the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be accepted and taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

Courts have noted that "[i]n employment discrimination cases, the summary judgment standard is 'applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.,* 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) *quoting Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir. 1997).

As will be demonstrated below, Plaintiff has adduced ample evidence to merit denial of Defendant's summary judgment motion on her FMLA retaliation claim (Count III of her Complaint).

### III.     Statement of Pertinent Facts

The pertinent facts are set out in Plaintiff's Answer to Defendant's Statement of allegedly Undisputed Facts and Plaintiff's Answer to that Statement (which also addresses additional facts relevant to the motion). They facts will not be repeated here in the interest of brevity, although Plaintiff will discuss the pertinent facts as necessary in the context of her arguments, *infra.*

## IV. <u>Argument</u>

Defendants' Motion for Summary Judgment should be denied as to Plaintiff's FMLA retaliation claim (Count III of the Complaint), as genuine issues of material fact remain to be decided as to that claim.

### a. *Summary Judgment Must be Denied on Plaintiff's FMLA Retaliation Claim[1]*

Claims of FMLA discrimination or retaliation, like claims under Title VII of the Civil Rights Act of 1964, are analyzed under the test developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *See Stewart v. Rutgers,* 120 F.3d 426, 432 (3d Cir. 1997).

As the Third Circuit Court of Appeals has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination].[2] Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. School Dist. Of Philadelphia,* 198 F.3d 403, 410 (citing *McDonnell Douglas,* 411 U.S. at 802).

Under *McDonnell Douglas, supra,* the exact analysis utilized may vary depending on the facts of a particular claim. *See, e.g., Matcak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933,938 (3d Cir. 1997). As the *Matcak* Court noted, " . . . the *McDonnell Douglas* Court cautioned that there is no rigid formulation of a *prima facie case* and the requirements may vary with "differing factual situations." *Id.*

---

[1] Plaintiff is not proceeding on her Disability claims in Count I and II of the Complaint (docket item no. 1).
[2] The *McDonnell-Douglas* analysis is couched in terms of denial of promotions, but is applied in the same manner to cases where, as here, the Plaintiff claims he was terminated for a discriminatory reason. *See, e.g., Jones v. City of Wilmington,* 299 F. Supp.2d 380, 394 n. 15 (D. Del. 2004).

*b.  The Law Relating to FMLA Retaliation Claims*

The FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). This section provides the source for FMLA "retaliation" claims. It is also unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA regime. 29 U.S.C. § 2615(a)(1). This section provides the source for FMLA "interference" claims (no such claim is being made in the instant case). The Third Circuit Court of Appeals has held that "[a]lthough neither provision expressly forbids employers from terminating employees 'for having exercised or attempted to exercise FMLA rights,' a Department of Labor regulation has interpreted the sum of the two provisions as mandating this result." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 301 (3d Cir. 2012).

"To succeed on an FMLA retaliation claim, a plaintiff must show that '(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights.'" *Ross v. Gilhuly,* 755 F.3d 185, 193 (3d Cir. 2014)(*citing Lichtenstein,* 691 F.3d at 302).

Plaintiff can easily demonstrate all three of the foregoing elements.

**1.  Adverse employment action is established**

Here, the "adverse action" prong of the analysis is easily dispensed with since the parties agree that Plaintiff suffered a termination of employment. Termination is unquestionably an adverse employment action. The Third Circuit has defined an "adverse employment action" as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation,

terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) *see also Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (adverse employment action is a "significant change in employment status, such as hiring, *firing,* failing to promote, reassignment, or a decision causing a significant change in benefits")(emphasis added).

### 2. Protected Activity Under the FMLA is Established

Defendant cites case authorities addressing FMLA *interference* claims, and requiring that the plaintiff in such a claim entitlement to FMLA leave to prevail. That is not the standard for FMLA *retaliation* claims. The Third Circuit Court of Appeals has made this clear. Addressing an FMLA retaliation claim in *Lichtenstein v. Univ. of Pittsburgh Med. Ctr., supra,* it specifically found that " . . . the adequacy of . . . [FMLA] notice *is a question of fact."  Lichtenstein v. Univ. of Pittsburgh Med. Ctr., supra,* 691 F.3d 294, 303 (3d Cir. 2012)(emphasis added). The Court noted that:

> To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave. 29 U.S.C. § 2612(e)(2). In doing so, the employee *"need not expressly assert rights under the FMLA or even mention the FMLA."* 29 C.F.R. § 825.303(b). When the leave is unforeseeable, the employee's obligation is to "provide sufficient information for an employer to reasonably determine whether the FMLA *may* apply to the leave request." *Id.* (emphasis added). As we have previously noted, this is not a formalistic or stringent standard. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating that the statutory and regulatory text suggests a *"liberal construction"* be given to FMLA's notice requirement); *see also Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 474 (8th Cir. 2007) ("The regulations already make it very easy for [an employee] to give notice of her intent to take leave."); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006) ("The notice requirements of the FMLA are not onerous.").
>
> <center>*** </center>
>
> . . . . Accordingly, the "critical test" is not whether the employee gave every necessary detail to determine if the FMLA applies, but "how the information

> conveyed to the employer is reasonably interpreted." *Sarnowski*, 510 F.3d at 402. How the employee's notice is reasonably interpreted ***is generally a question of fact, not law.***
>
> *Lichtenstein v. Univ. of Pittsburgh Med. Ctr., supra,* 691 F.3d 294, 303 (3d Cir. 2012)(emphasis added).

Here, the adequacy of Plaintiff's February 22, 2017 email is a question for the trier of fact, and entry of summary judgment on the issue of its adequacy would be improper in light of *Lichtenstein, supra.* The email, attached hereto as Exhibit "4", contains more than enough information to place the City on notice it may implicate the FMLA. It mentions (1) the fact that "sick leave" is being requested; (2) for multiple days; (3) the fact that the request is at the instance of Plaintiff's doctor; (4) and the fact that the request is related to "stressful work environment" and "other medical issues." *See* attached Exhibit "4". 29 C.F.R. § 825.303(a) requires that "where the employer does not have sufficient information about the reason for an employee's use of leave, *the employer* should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying" *Lichtenstein, supra* (emphasis added). Defendants chose not to do that. Instead, they simply fired Plaintiff. Genuine issues of material fact remain to be determined as to whether Plaintiff's February 22nd, 2017 email was protected activity for retaliation purposes.

### 3. <u>Causation is established</u>

In the FMLA retaliation context, where the "temporal proximity" between the protected activity and adverse action is "unusually suggestive," the Third Circuit has recognized that this "is sufficient *standing alone* to create an inference of causality and defeat summary judgment." *Lichtenstein, supra,* 691 F.3d at 307 (emphasis added). The *Lichtenstein* Court found that seven days between the protected activity and adverse action was "in the realm" of what the court had previously accepted as an unusually suggestive temporal proximity. Here, we have *one day,* or even less, between the protected activity and the termination. *See* the attached Exhibit "4"


(February 22nd, 2017 leave request email) and Exhibit "5" (February 23rd, 2017 termination letter). Of course, as noted in Plaintiff's Answer to Defendant's Statement of Facts, *no one* has been able to definitively testify that the termination decision was made *before* Plaintiff's protected activity on February 22, 2017. It is a reasonable inference it was made after her protected activity, and the termination letter is dated the day after the protected activity. There is no documentation (no emails, memos, etc.) that such a decision was ever made, when, or why. Exhibit "2", 13:15-16. Charles Brennan cannot rule out the fact that the request to fire Plaintiff was actually made on February 22, 2017 (*the day Plaintiff sent the email asking for time off*). Exhibit 3, 21:3-6 and 21:18-22. Brennan agrees he recalls *no request* from Defendant Washington to terminate Plaintiff in the face to face meeting on February 15th. Exhibit "3", 19:24-25 and 20:1-6. Defendant Washington *directly contradicted this* and tried to claim at her deposition that she made the termination request "probably like the first or second week of February, when we had a meeting with Charles Brennan and he witnessed firsthand himself." Exhibit "2", 11:23-25 and 12:1-3. Brennan torpedoed that claim with his testimony as aforesaid about the February 15th meeting. Later in her deposition, Defendant Washington claimed she *doesn't know* when she made the decision and can only say "I don't remember the exact date, but it would have been somewhere in February." Exhibit "2", 13:1-2. There is more than enough evidence to allow a reasonable inference the decision to fire came immediately after the protected activity on February 22nd.

If the seven (7) day temporal proximity found in *Lichtenstein* was sufficiently suggestive of causation, the much shorter period at issue here must certainly be as well.

    **4.**  <u>**Pretext is Established**</u>

Plaintiff can also easily establish pretext and can prove that the alleged legitimate reasons offered by Defendants for her firing were not its true reasons, but were a pretext for

7

FMLA retaliation.  *Jones v. School Dist. Of Philadelphia, supra,* 198 F.3d 403, 410 (citing *McDonnell Douglas,* 411 U.S. at 802).

First, temporal proximity *alone* justifies denial of summary judgment here. This is sufficient *standing alone* to create an inference of causality and defeat summary judgment. *Lichtenstein, supra,* 691 F.3d at 307 (emphasis added).  There is also ample authority to the effect that the same evidence a plaintiff uses to establish her *prima facie* case may also be used to establish pretext. While the defense in employment discrimination cases such as this one often seeks to "compartmentalize" the evidence, a particular piece of evidence is not a "one-use" item.  A plaintiff may rely on the *same evidence* in the *prima facie* case and the pretext analysis.  *See Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989). In *Jalil,* the Third Circuit noted that summary judgment evidence need not be "compartmentalized," and that:

> Although [a] fact is important in establishing plaintiff's *prima facie* case, there is nothing preventing it from also being used to rebut defendant's proffered explanation [for its decision]. As we have stated before, the *McDonnell-Douglas* formula does not compartmentalize the evidence so as to limit its use to only one phase of the case.  The plaintiff's evidence might serve both to establish a *prima facie* case and discredit a defendant's explanation.
>
> *Jalil v. Avdel Corp., supra,* 873 F.2d 701, 708 n. 6 (3d Cir. 1989)(citing *Dillon v. Coles,* 746 F.2d 998, 1003 (3d Cir. 1984).

Even if the Court declines to take the approach of the *Jalil* case, and seeks additional evidence of pretext, there is plenty here.  First, there was no indication from this February 15th email that Plaintiff was to be terminated -  or even disciplined at all.  Charles Brennan agrees he recalls *no request* from Defendant Washington to terminate Plaintiff in the face to face meeting on February 15th.  Exhibit "3", 19:24-25 and 20:1-6.  Defendant Washington *directly contradicted this* and tried to claim at her deposition that she made the termination request "probably like the first or second week of February, when we had a meeting with Charles Brennan and he witnessed

8

firsthand himself." Exhibit "2", 11:23-25 and 12:1-3.  This contradiction is enough, standing alone, to establish pretext.  Later in her deposition, Defendant Washington claimed she doesn't know when she made the decision and can only say "I don't remember the exact date, but it would have been somewhere in February." Exhibit "2", 13:1-2.  But there is still more.  We also have (1) the vagueness of the recollection of Defendant Washington, Charles Brennan, and Catherine Lamb as to the actual date of the termination decision; (2) the complete lack of any written documentation relating to the termination, or the unidentified "deficiencies" mentioned (but not elaborated on) in the termination letter (Exhibit "5"); (3) the fact that the February 15th incident did not result in a termination request, and (4) the fact that there appear to be no other performance problems that were raised between that date and the February 22nd protected activity.  All these facts are more than enough to show pretext and merit denial of summary judgment as to Plaintiff's FMLA retaliation claim.  Again, they may not even be needed.  Temporal proximity *alone* is enough to merit denial of a motion for summary judgment on an FMLA retaliation claim.  *See supra.*

*DeCicco v. Mid-Atl. Healthcare, LLC,* 275 F. Supp. 3d 546, 561-562 (E.D. P July 27, 2017) is instructive here, as it dealt with similar facts involving temporal proximity and an earlier failure to fire the plaintiff for an alleged performance issue.  In *DeCicco* (a case with much less favorable facts for the plaintiff than the one at bar), the Court noted, in finding pretext and denying summary jugment:

> When viewed in the light most favorable to Plaintiff, and given the unusually suggestive temporal proximity between his protected activity and termination, a reasonable jury could conclude that [the employer's] proffered reasons for Plaintiff's termination are "unworthy of credence" in the specific context of his FMLA retaliation claim. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 311 (3d Cir. 2012) ("We can imagine circumstances in which the timing of [an adverse] decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an

9

employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).") (*quoting Kohls v. Beverly Enterprises Wisconsin, Inc.,* 259 F.3d 799, 806 (7th Cir. 2001)). . . . Plaintiff was alleged to have repeatedly not met the expectations of his performance improvement plans, but was kept on as an employee for several months. Nevertheless, he was terminated just two days after engaging in a protected activity under the FMLA. A fact finder could conclude that—in the specific context of Plaintiff's FMLA retaliation claim—[the employer's] proffered justifications of Plaintiff's poor work performance and failure to meet the expectations of his performance action plans are "weak" and/or "implausible."

*DeCicco v. Mid-Atl. Healthcare, LLC,* 275 F. Supp. 3d 546, 561-562 (E.D. P July 27, 2017)

There is more than sufficient evidence in this case to demonstrate pretext and to merit denial of summary judgment.

### *c.* *The individual liability of Defendant Michel Washington and the "Catspaw" theory*

It is undisputed in this case that Defendant Michel Washington received the medical leave request email Plaintiff sent on February 22, 2017. *See* Exhibit "4." It is also undisputed that Defendant Washington she testified at her deposition that "I was the one that made the [termination] request." Exhibit "2", 9:20-24.  Defendants make no separate argument as to the individual liability of Defendant Michel Washington.  Such an argument would be futile.  The Third Circuit Court of Appeals has specifically held that individual liability is permitted under the FMLA for supervisors at public agencies, noting that "[]b]ecause the FLSA explicitly provides that an employer includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,' we agree that the FMLA similarly permits individual liability against supervisors at public agencies." *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417, 2012 U.S. App. LEXIS 1776, *22 (2012).

It is also clear in this case that, while Defendant Washington admits she made the request to have Plaintiff terminated, *see* Exhibit "2", 9:20-24, Charles Brennan (Defendant City's Chief

10

Information Officer) signed Plaintiff's termination letter and therefore technically terminated her employment.   Of course, this is of no moment.

The "catspaw" or "subordinate bias" theory of discrimination is applicable here.  It has been recognized by each of the federal circuit courts that have considered the issue.  *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles,* 450 F.3d 476 (10th Cir. 2006), *cert. dismissed* 127 S. Ct. 1931, 167 L. Ed. 2d 583 (2007).  The Third Circuit Court of Appeals recognizes this theory as well.  *See, e.g., Abramson v. William Patterson College of New Jersey,* 260 F.3d 265 (3d Cir. 2001).  The *Abramson* Court noted that:

> Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate. *See Abrams v. Lightolier Inc.,* 50 F.3d 1204, 1214 (3d Cir. 1995) (stating in ADEA case that if plaintiff's supervisor participated in decision to terminate him, even though president of company formally terminated him, evidence of supervisor's age-related animus would be relevant in determining if discriminatory motive at play); *see also Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker."); *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir. 2000) (stating that "discriminatory comments . . . made by . . . those in a position to influence the decisionmaker" can be evidence of pretext); *Griffin v. Washington Convention Ctr.,* 330 U.S. App. D.C. 81, 142 F.3d 1308, 1312 (D.C. Cir. 1998) ("Evidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence."). As we noted in *Roebuck v. Drexel University,* 852 F.2d 715, 727 (3d Cir. 1988), "it is plainly permissible for a jury to conclude that an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision."
>
> *See Abramson v. William Patterson College of New Jersey,* 260 F.3d 265, 287 (3d Cir. 2001)(emphasis added).

One district court has noted that the "subordinate bias" theory (also known as the "cat's paw" theory) has been adopted in some form by every federal circuit court of appeals that has considered it, and that, under the theory, " . . . an employer may be held liable for a subordinate's prejudice *even if the decisionmaker lacked discriminatory intent."  Elston v. UPMC-Presbyterian*

11

*Shadyside,* 2007 U.S. Dist. LEXIS 78531, *14-15 (W.D. Pa. October 23, 2007)(emphasis added). In *Dey v. Colt Constr. & Devp. Co.,* 28 F.3d 1446 (7th Cir. 1994) the Seventh Circuit stated that summary judgment would not be proper "where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Id.* at 1459. In this case, while Defendants point out that Charles Brennan and Catherine Lamb were unaware of Plaintiff's medical leave request, see Defendants' Statement of Facts at paragraphs 35 and 38, they didn't need to be. Defendant Washington admits making the request to terminate Plaintiff. Plaintiff was terminated because of her request. And she undisputedly received the medical leave request email (she is listed as the only recipient on it). Under the subordinate bis or "catspaw" theory, her animus toward Plaintiff for making the leave request, and her involvement as the initiator of the termination decision (without which the decision would not have been made), are enough to establish liability on the part of the Defendant City.

  **V.**  **Conclusion**

  For the foregoing reasons, the Motion for Summary Judgment should be denied as to Plaintiff's FMLA retaliation claim.

               Respectfully submitted,

               S/ Wayne A. Ely, Esquire

               Wayne A. Ely, Esquire
               Attorney for Plaintiff
               59 Andrea Drive
               Richboro, PA 18954
               (215) 801-7979

May 8, 2019