IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ADENIKE GARDINER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 18-904 |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

In this action, Plaintiff Christina Adenike Gardiner ("Gardiner") asserts claims against her former employer, Defendant City of Philadelphia (the "City") and supervisor, Michel Washington ("Washington") (collectively, the "Defendants") for retaliation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951-963, and for retaliation and interference pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. Before this Court is Defendants' Motion for Summary Judgment in which they request dismissal of all claims asserted by Gardiner.[1] For the reasons discussed below, the Motion will be granted.

## I. FACTUAL BACKGROUND

Gardiner alleges that she was terminated in retaliation for requesting sick leave to address her mental health issues in violation of the FMLA. Compl. (Doc. No. 1) ¶¶ 25, 39-47.

The undisputed facts of record confirm that Gardiner was employed by the City's Office of Innovation and Technology as a project manager from November 25, 2013 through February

---

[1] Upon consent of the parties and by order of the Honorable Mark A. Kearney, the case was referred to the undersigned to conduct all further proceedings, including trial, the entry of final judgment, and all post-trial proceedings. Doc. No. 10.

24, 2017. Defs.' Statement of Undisputed Facts (Doc. No. 33) ¶¶ 1, 31 [hereinafter "Defs.' Facts"]; Pl.'s Answer to Defs.' Statement of Material Facts (Doc. No. 34) ¶¶ 1, 31 [hereinafter "Pl.'s Facts"].  In August 2016, Washington became Gardiner's supervisor.  Defs.' Facts ¶ 3; Pl.'s Facts ¶ 3.  Washington would "micro-manage" Gardiner and expressed her belief that Gardiner could not adequately do her job.  Defs.' Facts ¶¶ 4-7, 16-17; Pl.'s Facts ¶¶ 4-7, 16-17.  In December 2016, Gardiner took several days of sick leave due to work stress related to her professional relationship with Washington.  Defs.' Facts ¶¶ 4, 5, 8; Pl.'s Facts ¶¶ 4, 5, 8.  Gardiner also became ill with the flu at some point in early 2017 and did not come to work.  Defs.' Facts ¶ 11; Pl.'s Facts ¶ 11.  Upon her return to work, Gardiner was involved in a meeting that Charles Brennan ("Brennan"), then the Chief Innovation Officer, described as an "absolute disaster."  Defs.' Facts ¶¶ 12-14; Pl.'s Facts ¶¶ 10, 14.  On February 15, 2017, Washington sent Gardiner an email stating that Gardiner was perceived as "indifferent, aloof and uncommitted," and that Washington hoped that Gardiner would "show positive changes immediately."  Defs.' Facts ¶ 18; id. at Ex. D; Pl.'s Facts ¶ 18.

On February 22, 2017, Gardiner sent an email to Washington stating:  "With me being in a stressful work environment and having other medical issues, my doctor wants me to take sick leave for a few days.  I am hoping to return to work sometime next week."  Defs.' Facts ¶ 23; id. at Ex. G; Pl.'s Facts ¶ 23.  Gardiner's doctor had told her over the telephone on the morning of February 22, 2017, to take sick leave for a few days.  Defs.' Facts ¶ 24; Pl.'s Facts ¶ 24.  Gardiner planned to see her doctor on February 28, 2017, and had sufficient sick leave to cover the interim period.  Defs.' Facts ¶ 25; Pl.'s Facts ¶ 25.  The "other medical issues" that Gardiner referred to, but did not explain, in her email were depression, anxiety, and stress caused by her interactions with Washington.  Defs.' Facts ¶ 27; Pl.'s Facts ¶ 27.  Gardiner's doctor, however,

2

never diagnosed her with depression or anxiety, nor did she receive any medication for depression, anxiety, or stress.  Defs.' Facts ¶¶ 27-28; Pl.'s Facts ¶¶ 27-28.  Gardiner testified that her intention upon seeing her doctor on February 28, 2017 was to make sure she was physically healthy, and then she intended to take a vacation.  Defs.' Facts ¶ 29; Pl.'s Facts ¶ 29.  On February 24, 2017, however, Gardiner received a letter from Brennan dated February 23, 2017 that informed her that she had been terminated due to continued performance deficiencies, among other reasons.  Defs.' Facts ¶¶ 31-32; Pl.'s Facts ¶¶ 31-32.

## II.     SUMMARY JUDGMENT STANDARD

Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Williams v. Wells Fargo Bank, No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012)).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  Id. at 248.  When ruling on a motion for summary judgment, the court shall consider facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535,

538 (3d Cir. 2006). To prevail on summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-moving party].'" Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (quoting Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)); see also Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Retaliation in Violation of the FMLA[2]

The FMLA prohibits an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); see also 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). To make out a prima facie case of FMLA retaliation, a plaintiff must establish that:

---

[2] While Defendants move for summary judgment on Plaintiff's entire Complaint, including the ADA retaliation claim (Count I), PHRA retaliation claim (Count II), and FMLA interference and retaliation claims (Count III), Gardiner only defends her FMLA retaliation claim in her brief in opposition to Defendants' Motion for Summary Judgment. See Pl.'s Mem. of Law in Resp. to Defs.' Mot. for Summ. J. (Doc. No. 34-1) [hereinafter "Pl.'s Resp."]. Gardiner's brief expressly states that she is not proceeding on her disability claims in Counts I and II of the Complaint, id. at 3 n.1; Pl's Facts
¶ 30, and that there is no FMLA "interference" claim being made in the instant case, Pl.'s Resp. at 4. Accordingly, summary judgment will be granted in favor of the Defendants on Gardiner's ADA and PHRA retaliation claims and FMLA interference claim. See, e.g., Fischer v. G4S Secure Solutions USA, Inc., 614 F. App'x 87, 91 n.3 (3d Cir. 2015) (affirming district court's determination that plaintiff abandoned claim by failing to address it at all in opposition to motion for summary judgment and noting that "'[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered [and] [i]f it does not do so, and loses the motion, it cannot raise such reasons on appeal.'" (quoting Liberles v. Cnty. of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983))); Sylvester v. DGMB Casino, LLC, No. 15-8328 (RMB/KMW), 2017 WL 3894964, at *10 (D.N.J. Sept. 6, 2017).

4

(1) he or she invoked his or her right to FMLA-qualifying leave; (2) he or she suffered an adverse employment decision; and (3) the adverse action was causally related to his or her invocation of rights. Id. If a plaintiff can make this showing, the burden of production then shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason' for its decision." Id. (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant meets this "minimal burden," the plaintiff must then show that this proffered justification is mere pretext for retaliation by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the defendant's] articulated legitimate reasons.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

### B. Defendants are Entitled to Summary Judgment on Gardiner's FMLA Retaliation Claim

Here, Gardiner has not established a prima facie case of FMLA retaliation given her failure to present sufficient evidence regarding the first element of a prima face case, namely that she invoked her right to FMLA-qualifying leave.[3]

To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave. Parrotta v. PECO Energy Co., 363 F. Supp. 3d 577, 602 (E.D. Pa. 2019). Although an employee does not need to specifically and expressly request leave under the FMLA to qualify for protection, see 29 C.F.R. § 825.301(b), an employee should "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request," id. § 825.303(b). "Calling in 'sick' without providing more

---

[3] Neither party disputes that Gardiner satisfied the second element of a prima facie case of retaliation when she was terminated from her employment. Moreover, while the parties dispute causation, the one-day temporal proximity between Gardiner's notice of sick leave on February 22, 2017, and the date of her termination letter on February 23, 2017, creates a genuine issue of material fact related to causation and pretext.

5

information will not be considered sufficient notice to trigger an employer's obligations under the Act." Id. In determining whether the employee's notice to his or her employer was adequate, consideration must be given to "how the information conveyed to the employer is reasonably interpreted." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). "[T]he 'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" Lichtenstein, 691 F.3d at 303 (quoting Sarnowski, 510 F.3d at 402). "[W]here the employer does not have sufficient information about the reason for an employee's use of leave, *the employer* should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." Lichtenstein, 691 F.3d at 303 (emphasis in original) (quoting 29 C.F.R. § 825.303(a)). Although the issue of adequate notice is usually a question of fact, notice becomes a question of law where "'no rational trier of fact could conclude' that the employee's notice was adequate." Id. at 303 n.14 (quoting Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980-81 (5th Cir. 1998)).

Here, on the morning of February 22, 2017, Gardiner called her primary care provider's office and explained the work stress she was experiencing. Defs.' Facts ¶ 24; id. Ex. B at 63; Pl.'s Facts ¶ 24. According to Gardiner, the doctor told her over the phone to "take sick leave for a few days, come in and see me on the 28th." Defs.' Facts Ex. B at 63. At that time, Gardiner had sufficient sick leave accrued for the time she was requesting to take. Id. Gardiner testified as follows regarding her plan with respect to leave:

> Q. When did your doctor tell you he wanted or she wanted you to take sick leave?
>
> A. That morning [of February 22], when I explained to her my situation.
>
> Q. So, the doctor says, you take sick leave for a few days, come in and see me on the 28th?

> A. Yes.
>
> Q. Did you have sick leave at that time?
>
> A. Yes.
>
> Q. You had accrued days for the time you were trying to take here?
>
> A. Yes.
>
> Q. Now, you said you felt depressed and you felt anxious as a result of your interactions with Michel?
>
> A. Yes. My pressure was high, too, in December, so I wanted to make sure I didn't have high blood pressure again. I was feeling the same symptoms, so I wanted to make sure my pressure wasn't high again. That is one of the main reasons I wanted to go to the doctor, just to confirm.
>
> . . .
>
> I was not ready to go back [to work] because the anxiety started and I said, I'll wait to see my doctor, I'll use my time, just to make sure, because I don't want any issues happening on the job, physically, so -- it could be anything, so I just wanted to make sure.

Id. at 63, 69-71. Gardiner also testified that, after confirming with her doctor that she was healthy, she intended to take a vacation, as established by the following colloquy:

> Q. So in February of 2017, what you wanted was to take a break, go see your doctor, make sure you were okay, and then come back to work?
>
> A. My thing was – and then plan for vacation, yes. Like, I need a vacation.
>
> Q. What kind of vacation were you thinking about?
>
> A. In the country. Usually I do international, go to the country, fresh air, decide where it would be relaxing.

Id. at 74.

On February 22, 2017, Gardiner emailed Washington, stating:

With me being in a stressful work environment and having other medical issues, my doctor wants me to take sick leave for a few days. I am hoping to return back to work sometime next week.

7

Defs.' Facts Ex. G.  Gardiner testified that the "other medical issues" she referenced in the email were depression, anxiety, and stress, although her doctor never diagnosed her with depression or anxiety or treated her with any medication for those issues.  Defs.' Facts ¶¶ 27-28; Pl.'s Facts ¶¶ 27-28.  Gardiner did not indicate to Washington what these "other medical issues" were, nor did she discuss her absence from work with the human resources department.  Defs.' Facts ¶ 27; id. Ex. B at 66; Pl.'s Facts ¶ 27.

According to Gardiner's own testimony, she intended to take her accrued sick days before seeing her doctor for an upcoming appointment that was scheduled for the purpose of confirming that she was well enough to continue her work.  Defs.' Facts ¶ 29; Pl.'s Facts ¶ 29.  She then intended to plan a vacation.  Id.  Nowhere in her testimony does she indicate that she intended to request FMLA leave, was considering going on FMLA leave, or had a serious health condition that would entitle her to FMLA leave.  To support a claim for FMLA retaliation, Gardiner "must at least raise a fact issue as to whether the leave [s]he took was FMLA leave.  Nothing in the record[,] however, supports such a finding.  No record evidence suggests that either [Gardiner] or Defendant[s] understood that [Gardiner] was taking FMLA leave, as opposed to sick days, personal days, or vacation days."  Barry v. Pennsauken Bd. of Educ., No. 16-9230, 2018 WL 6332511, at *2 (D.N.J. Nov. 7, 2018).

Nor does the record establish that Defendants were on notice that Gardiner was using sick leave for an FMLA-qualifying reason.  See id. at *3; cf. Lichtenstein, 691 F.3d at 304 (determining that a genuine issue of material fact existed as to whether the plaintiff provided the employer sufficient notice to state an FMLA retaliation claim when she informed the employer that her mother was "currently in the *emergency room*," had "been brought into the hospital via *ambulance*," and that she "would be *unable* to work that day" (emphasis in original)).  Here,

8

Gardiner only made a vague reference to a stressful work environment and unidentifiable "medical issues" and stated that she hoped to return back to work after taking a few days of sick leave. This is precisely the type of "vague, generic reference[s] . . . in which the likelihood of a serious health condition is merely conceivable but not sufficiently likely to warrant shifting the burden of inquiry onto the employer." Lichtenstein, 691 F.3d at 305 n.16 (determining that even a "reference about going to a hospital" "does not dictate that a question of fact necessarily exists" regarding adequate notice).

Gardiner's email falls far below these standards. Notably, Gardiner's request omits any description of her symptoms, the type of treatment she will need, or the condition(s) that precipitated her email regarding sick leave, beyond "stressful work environment." Defs.' Facts Ex. G. Under these circumstances, Defendants had no reason to take Gardiner's request for a few days' sick leave at anything other than face value, as Defendants were unaware of any prior serious health condition, any upcoming medical treatment, or any other probable basis for Gardiner's leave request possibly being FMLA-protected. Contrary to Gardiner's assertion, Pl.'s Resp. at 6, a reasonable factfinder could not infer that Gardiner provided the Defendants with reasonably adequate notice to make them aware that she was seeking FMLA leave for her absence or that the Defendants were on notice that she was using sick leave for a potentially FMLA-qualifying reason.[4] "Federal law, including the FMLA, does not allow a retaliation claim

---

[4] As Defendants contend in their brief, Gardiner has failed to set forth sufficient evidence that Gardiner was suffering from a serious health condition at the time she made her leave request, Defs.' Br. at 13-15, an argument that Gardiner does not address. "To qualify for FMLA leave . . . . an employee must have a 'serious health condition,' defined as a physical or mental condition involving either inpatient care or continuing treatment involving a period of incapacity or treatment for incapacity." Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 155 (3d Cir. 2015) (citing 29 U.S.C. §§ 2611(11), 2612(a)(1)(D); 29 C.F.R. § 825.102); see also 29 C.F.R.

(Footnote continued on next page)

9

when [plaintiff] fails to establish he [or she] invoked his [or her] rights under the FMLA." Parrotta, 363 F. Supp. 3d at 604. Defendants cannot be held liable for retaliating against Gardiner for her request for sick leave in February 2017 because she did not produce evidence that she invoked the right to FMLA-qualifying leave. Chamberlain v. Wyoming Cnty., No. 3:16-1408, 2018 WL 5920641, at *15 (M.D. Pa. Nov. 13, 2018).

---

§ 825.113. Continuing treatment is defined as "[a] period of incapacity . . . that also involves . . . treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under supervision of the health care provider." 29 C.F.R. §§ 825.102, 825.115(a)(1).

Gardiner has failed to provide evidence that any condition or conditions that caused her to request sick leave on February 22, 2017 were serious health conditions pursuant to the FMLA. Gardiner has not alleged that she received inpatient care. Nor has she provided any evidence that she sought treatment two or more times before March 24, 2017, as required under 29 C.F.R. § 825.115(a)(1), that there were extenuating circumstances that prevented her from seeking such treatment, or that her physician provided her with "a regimen of continuing treatments under the supervision of the health care provider," as required under 29 C.F.R. § 825.115(a)(2). At most, based on the record on summary judgment, Gardiner sought treatment on February 28, 2017. Gardiner also admits that she was not diagnosed with anxiety or depression, nor did she receive any medication for anxiety, depression, or stress. Instead, Gardiner testified that she intended to see her health care provider to ensure that she was healthy and then plan a vacation.

Therefore, based on the summary judgment record, Gardiner has failed to proffer sufficient evidence that she suffered from a serious health condition under the FMLA. Criscitello v. MHM Servs., Inc., No. 4:10-CV-0200, 2013 WL 4049724, at *7 (M.D. Pa. Aug. 9, 2013) (citing Naber v. Dover Healthcare Assocs., Inc., 473 F. App'x 157, 159-60 (3d Cir. 2012), Mascioli v. Arby's Rest. Grp., Inc., 610 F. Supp. 2d 419, 429-30 (W.D. Pa. Mar. 16, 2009)) (determining that, absent any genuine issue of material fact as to whether plaintiff suffered from a serious health condition, plaintiff was unable to make out a prima facie case for retaliation); see also Bonkowski v. Oberg Industries, 787 F.3d 190, 193 (3d Cir. 2015) (affirming grant of summary judgment on FMLA interference and retaliation claims because employee failed to establish his absence from work was due to a "serious health condition"); Giddens v. UPS Supply Chain Solutions, 70 F. Supp. 3d 705, 719 (D. Del. 2014).

## IV. **CONCLUSION**

For the reasons discussed above, Gardiner has failed to raise a genuine issue of material fact regarding whether she can meet her evidentiary burden to establish FMLA retaliation. Consequently, Defendants are entitled to summary judgment. An appropriate Order follows.

Dated: June 14, 2019

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE